UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA

v.                                                      5:09-CR-197 (GTS)

DAVID SANTALUCIA,

                          Defendant.
_____

APPEARANCES:                          OF COUNSEL:

HON. ANDREW T. BAXTER              RICHARD SOUTHWICK, ESQ.
United States Attorney for the         Assistant United States Attorney
Northern District of New York
  Counsel for the Government
100 South Clinton Street
Syracuse, NY 13261-7198


FEDERAL PUBLIC DEFENDER            LISA A. PEEBLES, ESQ.
  Counsel for Defendant             First Assistant Federal Public Defender
Office of the Federal Public Defender
4 Clinton Square, 3rd Floor
Syracuse, NY 13202

HON. GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court in this criminal weapons possession prosecution is a motion

filed by David Santalucia ("Defendant") to suppress (1) physical evidence discovered without a

search warrant in his mother's home after his arrest there, and (2) an incriminating statement that

parole officers elicited from him after the discovery of the physical evidence and allegedly

before he was Mirandized.   (Dkt. No. 9.)  For the reasons set forth below, Defendant's motion is

granted in part and denied in part.

## I.      RELEVANT BACKGROUND

On January 26, 2006, Defendant signed a Certificate of Release to Parole Supervision in which he agreed to, *inter alia*, permit parole officers to search and inspect his "person, residence and property."  (Dkt. No. 10, Part 3.)  At the time, Defendant's "release residence" was listed as 629 Rosemont Place in Utica, NY.  (*Id*.)  At some point thereafter, Defendant's approved residence was changed to an apartment in New York City.  (Dkt. No. 11, at 2.)

On February 2, 2009, Defendant was arrested at his mother's house in Utica, New York on a parole absconder warrant.  (Dkt. No. 11, Part 1, at 1-2.)  On April 2, 2009, Defendant was charged in a one count indictment with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922 (g)(l).  (Dkt. No. 9, at 2.)

On June 17, 2009, Defendant filed a motion to suppress (1) physical evidence discovered without a search warrant in his mother's home after his arrest there, and (2) an incriminating statement that parole officers elicited from him after the discovery of the physical evidence and allegedly before he was Mirandized.   (Dkt. No. 9.)  On July 28, 2009, a suppression hearing was held before the undersigned.  At the conclusion of the hearing, the undersigned reserved decision and indicated that a written decision would follow.  This is that written decision.

## II.     STATEMENT OF FACTS

On February 2, 2009, three New York State parole officers set up surveillance outside Defendant's mother's home at 743 Rutger Street in Utica, NY, based on information they received from an informant that Defendant had been staying with his mother there for nearly a week.  (Dkt. No. 11, Part 1, at 1-2.)  After some time passed, the officers, who were in possession of a non-judicially issued parole warrant dated March 18, 2008 (Dkt. No. 11, Part 2),

approached the home and knocked on the door (Dkt. No. 11, Part 1, at 1-2).  Defendant's mother

answered the door, and granted the officers permission to enter the home.  (*Id.*)

Upon entry, Parole Officer Anthony Stucchi spoke with Ms. Santalucia.  (*Id.*)  He

advised her of his identity and official status, and informed her that he had an arrest warrant for

her son. (*Id.*)  After denying that her son was present in the home, Ms. Santalucia pointed to a

partially opened door off the kitchen, indicating with her hand that Defendant was present on the

other side of the door.  (*Id.*)  Parole Officers Stuchi and Pezdek then pushed open the door,

where they found Defendant sitting on a mattress on the floor of a room, holding a pair of blue

jeans in his hand while trying to light a cigarette.  (Dkt. No. 16, at 21-23.)  The two officers took

Defendant into custody, placing him in handcuffs and removing him from the room.  (*Id.* at 23-

25.)

At the suppression hearing, Officer Lomedico testified that, subsequently, he entered the

room and "secured [it] for safety reasons."  (*Id.* at 43-44.)  More specifically, Officer Lomedico

testified that he entered the room to "look for possibly burning cigarettes on the mattress,

weapons, needles, possibly a lamp laying down that could start a fire, things of that nature."

(Dkt. No. 16, at 44.)  Officer Lomedico testified that, "[a]s [he] knelt down on the mattress, the

mattress pulled slightly away from the wall, [and he] could see that there was something that

appeared to be a material."  (*Id.*)  A further examination revealed that "it was a ski mask with

what appeared to be the butt of a pistol coming out from it."  (*Id.* at 44-45.)

Officer Lomedico "brought [the gun] out into the kitchen and . . . handed it to the police

officers that were coming in."  (*Id.* at 46.)  Officer Stuchi testified that, "when [he] saw [Officer

Lomedico] come out of the room with [the gun] and realized what it was inside the hat, [he]

turned to [Defendant] and just kind of basically whispered, what are you doing with that," to which Defendant replied, "I have a lot of enemies." (*Id*. at 24-25.)

The warrant squad arrived shortly thereafter, took custody of the weapon, and asked Ms. Santalucia for permission to search the remainder of the premises. (*Id*. at 27-28.) After Ms. Santalucia declined permission, the warrant squad sought and obtained a warrant to search the house. (*Id*. at 28.) A search of the house was then performed. (*Id*.)

## III.    SUMMARY OF GROUNDS FOR MOTION TO SUPPRESS

Defendant argues that the physical evidence should be suppressed because, based on the totality of the circumstances, the search exceeded the officers' authority. In particular, Defendant argues that (1) there was no warrant to search the home, (2) Defendant has a reasonable expectation of privacy in a third party's home when he is an overnight guest there, and (3) after Defendant was placed in handcuffs, there no longer existed security concerns that justified a search of the home. Defendant further argues that the incriminating statement, "I have a lot of enemies," should be suppressed because Defendant was questioned before being provided with a *Miranda* warning.

In response, the Government advances three arguments. First, the Government argues as follows: (1) a person's expectation of privacy in a third party's home can be no greater than his expectation of privacy in his own home; (2) as a parolee (who had signed a Release Agreement consenting to a search of his residence, person and property), Defendant had a "severely diminished" expectation of privacy in his own home; and (3) due to this severely diminished expectation of privacy, the issue before the Court is whether, under the circumstances, the search conducted by the parole officers was rationally related to their duty to detect and prevent parole

violations so as to protect the public from the commission of further crimes.

Second, the Government argues that, under the circumstances, the parole officers' search was reasonable and rationally related to his duty because (1) Defendant was an absconded parolee for whom a parole warrant had been issued, (2) he was a career criminal with seven prior felony convictions, including one prior conviction for criminal possession of a weapon in the third degree (a violent crime), (3) in addition to being concerned that weapons or needles might be in the room, the parole officer was concerned that a fire might start in the room, and (4) the search was brief.

Third, the Government argues that, even if Defendant did not have a "severely diminished" expectation of privacy under the circumstances, he does not have standing to avail himself of a traditional Fourth Amendment invasion-of-privacy argument because the home in question belonged to Defendant's mother, not Defendant.

## IV.   DISCUSSION

### A.      Defendant's Motion to Suppress Physical Evidence

"[T]o claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998).  Generally, "an overnight guest may raise a Fourth Amendment objection to a warrantless search of the host's home." *United States v. Pabon*, 603 F. Supp.2d 406, 413 (N.D.N.Y. 2009) (Kahn, J.) [citation omitted].

Having said that, a parolee's reasonable expectation of privacy is less than that of an ordinary citizen.  *Pabon*, 603 F. Supp.2d at 415 [citations omitted].  In addition, when a parolee, as a condition of his parole, signs a waiver allowing a parole officer to search him or his home at

any time pursuant to N.Y. Comp. Codes R. & Regs. tit. 9, § 8003.2(d), that parolee's expectation of privacy is further diminished.  *Id*.[1]  As a result, "[p]arole officers are vested with authority to search parolees in situations which would be impermissible if directed against ordinary citizens by a police officer."  *Id*. at 416 (citations omitted).

For example, in *United States ex rel Santos*, a New York State Parole Officer obtained a parole warrant for a parolee suspected to be in violation of his parole condition and searched the parolee's home without a search warrant or consent.  *United States ex rel Santos v. N.Y.S. Board of Parole*, 441 F.2d 1216, 1218 (2nd Cir. 1971).  Upon the parolee's motion to suppress, the Second Circuit held that a search which would be unlawful if directed against an ordinary citizen may be proper if (1) conducted against a parolee reasonably suspected to be in violation of his parole conditions, and (2) the search was conducted "in the course of [the parole officer's] carrying out [his] duty [to enforce the parolee's duty to live and remain at liberty without violating the law]."  *Santos*, 441 F.2d at 1218.

More recently, the Second Circuit has articulated this latter condition as being satisfied when "the conduct of the parole officer [is] rationally and reasonably related to the performance of the parole officer's duty [including his duty to protect the public from the commission of further crimes]."  *See United States v. Newton*, 368 F.3d 659, 665-66 (2d Cir. 2004) [citation omitted].

---

[1]    Here, Defendant is subject to warrantless and suspicionless searches because he has submitted to this condition in accordance with New York State Parole Regulations. According to the New York State Compilation of Codes, Rules and Regulations, one of the conditions of parole in New York State is that "a releasee will permit his parole officer to visit him . . . and will permit the search and inspection of his person, residence and property."  N.Y. Comp. Codes R. & Regs. tit. 9, § 8003.2(d).

Here, Parole Officer Lomedico's search of the residence was rationally and reasonably related to his duty not only to investigate Defendant's parole violation but to protect the public from the unlawful possession of weapons or starting of a fire.  For example, the Court finds that the protective sweep of the room performed by Parole Officer Lomedico was necessary in light of the fact that (1) Defendant was found with a cigarette in his hand, (2) Defendant was known to have been recently using drugs, (3) Defendant appeared disheveled, and (4) Parole Officer Lomedico saw a toppled lamp that he believed could have started a fire.  (Dkt. No. 16, at 18-19, 22, 41-42, 44-45, 69-70.)  These facts suggest the reasonable possibility that a fire could have been started in the room.  The Court notes that, because the butt of the gun was in plain view after Parole Officer Lomedico knelt on the mattress to search the area where Defendant was seated, Defendant's purported lack of consent to the search is immaterial.[2]  The Court notes also that the presence of the police officers during the Parole Officer Lomedico's search is legally immaterial.[3]

Finally, the Court finds that, even if Defendant did not have a "severely diminished" expectation of privacy in his mother's home for some reason, he does not have standing to assert

---

[2]      *See United States v. Stuckey*, 06-CR-0339, 2006 WL 2390268, at *4 (S.D.N.Y. Aug. 16, 2006) ("The reasonableness of the parole officer's plain view search of Defendant's bedroom renders Defendant's consent to the search (or lack thereof) immaterial to the outcome of this motion.  In any event, to the extent that consent was required, it was provided by Defendant in writing when he agreed to the terms of his parole.").

[3]      *See Pabon*, 603 F. Supp.2d at 416 n.3 ("The presence of the police for the search and/or arrest does not alter the Court's analysis. A parole officer may make a valid search of a parolee in violation of his parole without an arrest or search warrant as long as the search is reasonably and rationally related to the performance of the parole officer's duties, and the parole officer may be assisted by police in affecting the search since their duties and responsibilities are frequently intertwined.") [citation omitted].

the Fourth Amendment privacy right held by his mother for two reasons:

> (a) Fourth Amendment rights are personal and cannot be asserted vicariously, and
> (b) requiring police who already hold an arrest warrant for a suspect to obtain a search warrant before they can pursue that suspect in a third party's home would grant the suspect broader rights in the third party's home than he would have in his own home . . . .

*Pabon*, 603 F. Supp.2d at 414-15 (citations omitted).[4]  Morever, to the extent that Defendant argues that his mother's home was also *his* home, that argument (in addition to being undermined by the record evidence) would mean that the search of the home was expressly consented to by Defendant's signing of the Certificate of Release to Parole Supervision.

For all these reasons, the Court concludes that the search and seizure of the firearm in question did not violate Defendant's rights.  As a result, the Court denies Defendant's motion to suppress physical evidence of the firearm.

**B.      Defendant's Motion to Suppress Statements**

"*Miranda*'s warning requirements apply only to custodial interrogation."  *U.S. v. Newton*, 369 F.3d 659, 669 (2d Cir. 2004) (citing *Miranda v. Arizona*, 384 U.S. 436, 444, 477, [1966]).

---

[4]      *Cf. United States v. Graham*, 553 F.3d 6, 9, 17 (1st Cir. 2009) (rejecting defendant's argument that the officers' entry into his mother's apartment and subsequent search of the bedroom and discovery of a firearm after he was arrested violated the Fourth Amendment because the officers possessed only a parole warrant, and not a search warrant, explaining that "the balancing of the relevant interests leads us to conclude that the search in this case was reasonable. . .  [T]he government has a significant interest in monitoring probationers, given their proclivity to both commit and cover up crimes[,] [a]nd Graham's expectation of privacy was greatly diminished by both his status as a probationer and the probation condition in his probation order that expressly informed him that the government could . . . search him, his property, his residence or a place he may be living based on reasonable suspicion rather than the more protective probable cause standard.  Put plainly, we cannot say that where, as here, the police possess reasonable suspicion that a probationer is violating the terms of probation, the Fourth Amendment demands that the police secure a search warrant before executing a probation search.").

The Second Circuit has held that a parolee who was handcuffed during a parole search of his residence was in custody, for *Miranda* purposes, even though he was told he was not under arrest, because a reasonable person in the parolee's place would have understood that his freedom of movement, even within his own home, was restricted to a degree comparable to that of an individual placed under formal arrest.  *Newton*, 369 F.3d at 673.

In *Newton*, a police officer conducting a search of defendant's mother's home recovered a charged firearm from the location indicated by Newton.  *Newton*, 369 F.3d at 679.  The Second Circuit found that, once the firearm was located, "two things were plain: (1) Newton would be formally arrested, and (2) the weapon no longer presented an immediate risk of danger to persons in the apartment."  *Id.*  "Nevertheless, without advising Newton of his Miranda rights, [the officer] proceeded to ask [Newton] why he had the gun."  *Id.*  The Second Circuit found that "this further inquiry does not fall within Miranda 's public safety exception," and therefore it was improper for the officer to question Newton prior to Mirandizing him.  *Id.*

Similar to the facts in *Newton*, in this case, after Officer Lomedico brought the firearm that he recovered from the room where Defendant was found into the kitchen, Officer Stucchi asked Defendant what he was doing with the weapon, to which Defendant replied, "I have a lot of enemies."  Regardless of the innocent nature of the question, Officer Stucchi's question was aimed at eliciting a response from Defendant.  Moreover, "[t]he statement inculpates [Defendant] to the extent that it seemingly acknowledges his possession of the gun."  *Newton*, 369 F.3d at 679.  As a result, the Court finds that it was improper for Officer Stucchi to question Defendant about the firearm prior to Mirandizing him.

As a result, the Court grants Defendant's motion to suppress his statements concerning the firearm.

9

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion to suppress physical evidence discovered in his

mother's home after his arrest is **DENIED**; and it is further

**ORDERED** that Defendant's motion to suppress his incriminating statement that parole

officers elicited from him after the discovery of the physical evidence and before he was

Mirandized is **GRANTED.**

Dated: October 14, 2009
          Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge